**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Steigerwald v. Berea*, **Slip Opinion No. 2026-Ohio-2554.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-2554

STEIGERWALD, APPELLEE, *v.* CITY OF BEREA ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Steigerwald v. Berea*, Slip Opinion No. 2026-Ohio-2554.]**

*Negligence—Political-subdivision immunity—R.C. Ch. 2744—No evidence of a physical defect with respect to bench in recreation center's locker room was presented—A decision to place a particular model of bench in a locker room does not amount to a physical defect on recreation-center grounds under R.C. 2744.02(B)(4)—Exception to political-subdivision liability in R.C. 2744.02(B)(4) does not apply—Court of appeals' judgment reversed and cause remanded to trial court.*

(No. 2024-1077—Submitted June 25, 2025—Decided July 8, 2026.)

APPEAL from the Court of Appeals for Cuyahoga County,
No. 112933, 2024-Ohio-2260

_____

SHANAHAN, J., authored the opinion of the court, which DEWINE, DETERS, and HAWKINS, J., joined and KENNEDY, J., joined in accord with her separate

opinion in *Hoskins v. Cleveland*, 2026-Ohio-1225. FISCHER, J., concurred in judgment only. BRUNNER, J., dissented, with an opinion.

SHANAHAN, J.

{¶ 1} Joan Steigerwald tripped over a bench in the women's locker room at the Berea Recreation Center and sustained serious injuries. She passed away 12 days later. Her estate sued appellants, the Berea Recreation Center and the City of Berea, the recreation center's owner and operator (collectively, "Berea").[1] Berea filed a motion for summary judgment, asserting political-subdivision immunity under R.C. Ch. 2744; the estate countered that Berea was not immune from liability, because Steigerwald's injuries resulted from a physical defect on the grounds of the recreation center—specifically, Berea's placing a bench with extended legs in a confined space. The trial court granted Berea's motion for summary judgment. The Eighth District Court of Appeals reversed, concluding that the trial court erred in granting summary judgment because the bench could constitute a physical defect under R.C. 2744.02(B)(4).

{¶ 2} We disagree with the Eighth District's conclusion. The decision to place in the women's locker room a bench that has no tangible imperfection and that functions as intended does not constitute a physical defect under R.C. 2744.02(B)(4). We therefore reverse the judgment of the court of appeals and remand the case to the trial court for entry of summary judgment in favor of Berea.

## BACKGROUND

{¶ 3} In April 2018, Steigerwald, a regular participant in a swimming class for seniors at the recreation center, entered the women's locker room. There, she tripped over the legs of a newly installed bench and sustained serious injuries. She died 12 days later.

---

1. Steigerwald's estate also named two alleged manufacturers and sellers of the bench, who were later dismissed.

{¶ 4} Her estate, through appellee, administrator Kurt Steigerwald, brought an action against Berea, alleging wrongful death and negligence in that Berea negligently and/or recklessly purchased a bench with extended legs for placement in a narrow space in the recreation center's women's locker room, thereby creating a hazard that caused Steigerwald's death. Berea moved for summary judgment, arguing that it was entitled to political-subdivision immunity under R.C. 2744.02(A) and that the exception to immunity found in R.C. 2744.02(B)(4) did not apply. R.C. 2744.02(B)(4) states that

> political subdivisions are liable for . . . death . . . that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function.

{¶ 5} The trial court granted Berea's motion for summary judgment, finding that no genuine issues of material fact existed and that Berea was entitled to political-subdivision immunity. Cuyahoga C.P. No. CV-20-931952 (May 25, 2022). The Eighth District reversed, concluding that genuine issues of material fact existed regarding whether the extended legs of the bench placed by Berea in the women's locker room constituted a physical defect. 2024-Ohio-2260, ¶ 31, 67 (8th Dist.). The court of appeals further held that political-subdivision immunity was not definitively restored under the defenses provided under R.C. 2744.03(A). *Id.* at ¶ 52-55.

{¶ 6} We accepted Berea's appeal on the following two propositions of law:

> Proposition of Law I: An allegedly negligent or reckless decision to use otherwise non-defective equipment cannot constitute

a "physical defect" within or on the grounds of buildings used in connection with governmental functions under R.C. 2744.02(B)(4).

Proposition of Law II: The decision to use a bench that is specifically designed to have legs that extend 5.75 inches beyond the bench seat in a locker room cannot constitute a physical defect within or on the grounds of buildings used in connection with governmental functions to establish an exception to political subdivision immunity under R.C. 2744.02(B)(4).

*See* 2024-Ohio-4919.

**{¶ 7}** We agree with Berea.

## ANALYSIS

**{¶ 8}** Political subdivisions and their employees are generally immune from liability for acts related to governmental functions. R.C. 2744.02(A)(1). This general grant of immunity is subject to certain exceptions under R.C. 2744.02(B). Even if an exception applies, immunity can be reinstated if a defense under R.C. 2744.03(A) is established. *Hoskins v. Cleveland*, 2026-Ohio-1225, ¶ 10, citing *McConnell v. Dudley*, 2019-Ohio-4740, ¶ 21-23.

**{¶ 9}** Berea qualifies as a political subdivision, *see* R.C. 2744.01(F), and the operation of an indoor recreation center is a governmental function, *see* R.C. 2744.01(C)(2)(u)(ii). Therefore, Berea is entitled to political-subdivision immunity unless one of the exceptions in R.C. 2744.02(B) applies.

**{¶ 10}** The Eighth District determined that the exception under R.C. 2744.02(B)(4) could apply, 2024-Ohio-2260 at ¶ 21 (8th Dist.). R.C. 2744.02(B)(4) removes political-subdivision immunity for injury or death "due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function." The court concluded that the

decision to place the bench with extended legs in a small locker room could constitute a "physical defect."  2024-Ohio-2260 at ¶ 31 (8th Dist.).  We disagree.

{¶ 11} The term "physical defect" is not defined in the statute, so we apply its plain and ordinary meaning.  *See Sharp v. Union Carbide Corp.*, 38 Ohio St.3d 69, 70 (1988) ("Where a particular term employed in a statute is not defined, it will be accorded its plain, everyday meaning.").  "Physical" pertains to material or tangible things.  *See Webster's Third New International Dictionary* (2002) (defining "physical" as "of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary"); *Black's Law Dictionary* (12th Ed. 2024) (defining "physical" as "[o]f, relating to, or involving material things; pertaining to real, tangible objects").  A "defect" is an imperfection that impairs function.  *See Webster's* (defining "defect" as "want or absence of something necessary for completeness, perfection, or adequacy in form or function"); *Black's* (defining "defect" as "[a]n imperfection or shortcoming, esp[ecially] in a part that is essential to the operation or safety of a product").  A "physical defect," then, is a tangible imperfection that impairs the function of an object.[2]

{¶ 12} Under its ordinary meaning, a "physical defect" for purposes of R.C. 2744.02(B)(4) could include design flaws, damage, or deterioration.  However, we held in *Hoskins* that a lifeguard's decision not to use an elevated lifeguard chair was not a tangible imperfection and therefore did not constitute a physical defect under R.C. 2744.02(B)(4).  *Hoskins*, 2026-Ohio-1225, at ¶ 19.

{¶ 13} Here, Berea presented deposition testimony from its recreation director, who stated that he had selected the bench after evaluating over a dozen models.  The chosen model was antimicrobial, movable, suitable for use in locker rooms with condensation, and compatible with cleaning equipment.  The bench was

---

2. The Eighth District has defined the term "physical defect" as a "'a perceivable imperfection that diminishes the worth or utility of the object at issue,'" *Doe v. Greenville City Schools*, 2022-Ohio-4618, ¶ 22, quoting *R.K. v. Little Miami Golf Ctr.*, 2013-Ohio-4939, ¶ 16 (1st Dist.), citing *Duncan v. Cuyahoga Community College*, 2012-Ohio-1949, ¶ 26 (8th Dist.).

not broken, unstable, or otherwise physically flawed and functioned as designed to provide seating for users of the recreation center.

{¶ 14} The estate's argument against the application of political-subdivision immunity rests not on any imperfection in the bench but on Berea's decision to place that particular model of bench in the women's locker room. This decision did not create a tangible imperfection. The estate equates a hazardous condition (i.e., the extended legs of the bench in the women's locker room) with a physical defect under R.C. 2744.02(B)(4). But not all hazards are physical defects. Moreover, the statute's reference to "within or on the grounds of" a building identifies the location where a physical defect must exist; it does not expand the meaning of "defect" itself. Thus, while a physical defect must be situated within or on the grounds of a building used in connection with the performance of a governmental function, that requirement does not convert a decision made by an employee of a political subdivision regarding the placement of an object into a physical defect. An object may present a risk of injury and yet remain free of physical defect. R.C. 2744.02(B)(4) limits liability to harms caused by tangible imperfections, not by all unsafe conditions.

{¶ 15} The Eighth District erred in treating Berea's placement of the bench as a "physical defect." No evidence suggests that the bench was broken, malfunctioning, or defective. The estate does not allege that the bench malfunctioned or was physically damaged. Rather, its claim centers on Berea's decision to place that particular bench—one with extended legs—in the women's locker room. But as we made clear in our holding in *Hoskins*, 2026-Ohio-1225, at ¶ 21, a discretionary decision involving otherwise functional equipment does not convert that equipment into a physical defect under R.C. 2744.02(B)(4).

{¶ 16} In *Hoskins*, the decedent's estate argued that a lifeguard's use of a folding chair instead of an elevated lifeguard chair created a dangerous condition that contributed to a person's drowning. The decedent's estate argued that the use

of the folding chair created a "blind spot" because the lifeguard's line of sight was obstructed by objects hanging on the lifeguard chair, thus constituting a physical defect. *Hoskins* at ¶ 19. We rejected that claim, holding that the lifeguard chair, being structurally sound and functioning as intended, did not contain a tangible imperfection that impaired its function. *Id.* at ¶ 18. The lifeguard's nonuse of the lifeguard chair was a matter of operational discretion—not a defect in the object itself. *Id.* at ¶ 19. The danger, if any, arose from how the lifeguard chair was used, not from any flaw in the chair's physical condition. *Id.*

{¶ 17} Our holding in *Hoskins* establishes the principle that the use or placement of functional equipment does not constitute a "physical defect." As in *Hoskins*, in which the alleged physical defect arose from the lifeguard's decision to use the folding chair and not the lifeguard chair, the alleged physical defect here arises from Berea's decision to place a structurally sound bench in the women's locker room. R.C. 2744.02(B)(4)'s physical-defect exception to political-subdivision immunity does not extend to such decisions.

{¶ 18} Likewise, the estate's reliance on *Doe v. Greenville City Schools*, 2022-Ohio-4618, is misplaced. The lead opinion in *Doe*, which posited that the absence of a fire extinguisher could create a physical defect, *see id.* at ¶ 27 (lead opinion), did not command a majority. Therefore, the lead opinion in *Doe* "articulates no binding rule of law to apply here," *State ex rel. M/I Homes of Cincinnati, L.L.C. v. Clermont Cty. Bd. of Elections*, 2025-Ohio-4362, ¶ 38.

{¶ 19} To hold that an object that does not have any tangible imperfection and that was functioning as intended may be considered a "physical defect" under R.C. 2744.02(B)(4) when someone was injured by that object would rewrite the statutory language and eliminate the distinction between decisions and defects. By declining to interpret "physical defect" so broadly, our holding today is consistent with our holding in *Hoskins*, 2026-Ohio-1225.

{¶ 20} The Eighth District's focus on whether Berea acted negligently by placing a bench with extended legs in a confined space does not change the outcome. The threshold question under R.C. 2744.02(B)(4) is whether the injury or death was caused by a "physical defect." Because the bench lacked any tangible imperfection and the alleged hazard arose solely from its placement within the women's locker room, the estate has not identified a "physical defect" within the meaning of R.C. 2744.02(B)(4).

## CONCLUSION

{¶ 21} The commonly understood meaning of "physical defect" is a tangible imperfection that impairs the function of an object. No evidence was presented showing that the recreation center's locker-room bench had a physical defect under this ordinary meaning. The exception to political-subdivision immunity in R.C. 2744.02(B)(4) therefore does not apply. We reverse the judgment of the Eighth District Court of Appeals and remand the case to the trial court for entry of summary judgment in favor of Berea.

Judgment reversed
and cause remanded to the trial court.

———————————

**BRUNNER, J., dissenting.**

{¶ 22} This appeal requires us to consider whether the Eighth District Court of Appeals correctly held that a genuine issue of material fact existed concerning whether appellants, the Berea Recreation Center and the City of Berea (collectively, "Berea"), were immune from liability for the premises-based tort of negligence under R.C. 2744.02(B)(4). In our review, we must determine whether evidence in the record shows that when the decedent, Joan Steigerwald, tripped over a bench in a locker room at the Berea Recreation Center, there were "physical defects within or on the grounds of" the recreation center. The majority opinion adopts an overly narrow definition of the term "physical defect" and performs an analysis that falls

short of what R.C. 2744.02(B)(4) requires. As I read the statute, appellee, Kurt Steigerwald, the administrator of Joan Steigerwald's estate, met his burden of presenting evidence showing the existence of a genuine issue of material fact about whether the "physical defect" exception to Ohio's governmental immunity in R.C. 2744.02(B)(4) applies. I therefore respectfully dissent.

{¶ 23} R.C. 2744.02(B)(4) provides that

> political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to *physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function* . . . .

(Emphasis added.) The majority opinion holds that the term "defect" is ordinarily understood to mean "an imperfection that impairs function." Majority opinion, ¶ 11; *see id.*, quoting *Webster's Third New International Dictionary* (2002) (defining "defect" as the "'want or absence of something necessary for completeness, perfection, or adequacy in form or function'"); *id.*, quoting *Black's Law Dictionary* (12th Ed. 2024) (defining "defect" as "'[a]n imperfection or shortcoming, esp[ecially] in a part that is essential to the operation or safety of a product'" [bracketed text in original]). As demonstrated by the examples provided by *Webster's* online dictionary, a "defect" can be either physical or nonphysical: defects in a tire or porcelain are physical, while a defect in logic is nonphysical. *Merriam-Webster Online*, https://www.merriam-webster.com/dictionary/defect (accessed Mar. 3, 2026) [https://perma.cc/B693-CFYL]. R.C. 2744.02(B)(4) is clear in its language that it applies only when the defect at issue is physical in nature—that is, as the majority notes, when the physical defect involves "material or tangible things," majority opinion at ¶ 11; *see id.*, quoting *Webster's* (defining

"physical" as "'of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary' "); *id.*, quoting *Black's* (defining "physical" as "'[o]f, relating to, or involving material things; pertaining to real, tangible objects'").

{¶ 24} I am concerned about the tack the majority opinion takes when it arrives at the conclusion that a "physical defect" is "a tangible imperfection that *impairs the function of an object*." (Emphasis added.) *Id.* The majority opinion appears to find that the requirement of "physical defects" in R.C. 2744.02(B)(4) ("physical defects within or on the grounds of, buildings that are *used in connection with the performance of a governmental function*" [emphasis added]), is augmented by *Black's* definition of the word "defect" to morph the legal requirement of a simple physical defect to require consideration of an object's function. Under the majority opinion's approach, a plaintiff now must prove that a physical defect is "'[a]n imperfection or shortcoming, esp[ecially] in a part that is essential to the operation or safety of a product'" (bracketed text in original), majority opinion at ¶ 11, quoting *Black's*, meaning there is something wrong with a part of the object or the way that it operates. R.C. 2744.02(B)(4) contains the word "used," but that word modifies "in connection with the performance of a governmental function," not the physical object itself. By adding the requirement that the function of the object must be impaired for a defect to exist, the majority opinion has added a requirement for overcoming governmental immunity from negligence that is not found in the plain language of R.C. 2744.02(B)(4). As such, the majority opinion effectively adds to a legislative act, which is not in our judicial wheelhouse.

{¶ 25} Then, hammering out another way to bar access to justice, the majority opinion proceeds to consider the allegedly defective bench in isolation, endorsing a tunnel-vision approach that focuses on whether the bench itself was "broken, malfunctioning, or defective" or whether the bench "malfunctioned or was physically damaged," majority opinion at ¶ 15. In other words, the majority opinion

limits its consideration to only whether the bench had some sort of *inherent* flaw that would have rendered it defective in any location, rejecting or at least ignoring that its placement may have been the problem. This narrow view ignores the fact that the statute requires more than tunnel vision when it states that immunity may be overcome for negligence of governmental employees "that occurs within or on the grounds of, and is due to *physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function*" (emphasis added), R.C. 2744.02(B)(4). The plain language of R.C. 2744.02(B)(4) requires that we consider whether the bench as placed in the recreation center's locker room was a physical defect "within or on the grounds of" *the recreation center*.

{¶ 26} I agree with the majority opinion that a defect would exist here if the bench *itself* were defective because it was damaged or malfunctioning. *See* majority opinion at ¶ 13. But the statute clearly does not limit that to be the *only* way there could be a physical defect in this case. Nothing in R.C. 2744.02(B)(4) indicates that a physical defect exists only when a discrete object has some sort of *inherent* flaw rendering it defective regardless of its location or context. *See Jones v. Delaware City School Dist. Bd. of Edn.*, 2013-Ohio-3907, ¶ 23 (5th Dist.) ("there is no requirement [in R.C. 2744.02(B)(4)] that the instrumentality that caused the injury contain an inherent defect"). Instead, the statute ties the "physical defect" to a physical location—"within or on the grounds of" a building used for government functions. As numerous appellate courts have recognized, a physical defect may exist because of the negligent design or layout of an area within a building or the negligent deployment of an otherwise functioning object. *See, e.g.*, *Moss v. Lorain Cty. Bd. of Mental Retardation*, 2009-Ohio-6931, ¶ 16 (9th Dist.) (holding that a negligently designed, maintained, and constructed kitchen area within a classroom may constitute a physical defect under R.C. 2744.02(B)(4)); *Jones* at ¶ 24 (holding that an orchestra pit in a school auditorium that was "not inherently defective" could

nonetheless constitute a physical defect because of the absence of lights and reflective tape around the pit); *Leasure v. Adena Local School Dist.*, 2012-Ohio-3071, ¶ 26-28 (4th Dist.) (holding that bleachers in a school gymnasium that did not have any inherent defect and had been certified to be in proper working order could nonetheless constitute a physical defect because of an employee's negligent setup of the bleachers).

{¶ 27} The statute by its terms requires common-sense inquiries in this case: Did the government cause the bench to be placed where it was, was that placement negligent, and did its placement in this manner at the recreation center cause the plaintiff's injury? Under these inquiries, there remains a genuine issue of material fact to be determined by the trier of fact.

{¶ 28} We cannot ignore that R.C. 2744.02(B)(4) requires us to include in our analysis situations in which an object may have no inherent defect but nonetheless *creates* a physical defect "within or on the grounds of" a building used for government functions because of its placement. By way of example, consider a recreation center with a large swimming pool. If the center negligently equips the pool with filters designed for small residential pools, those filters might be inadequate to handle the demands of that pool's capacity, which may in turn cause the pool's water to retain elements that permit the growth of bacteria that could be harmful to the health of the center's patrons. How could this not be a physical defect "within or on the grounds of" that recreation center? The improper filters would have impaired the function of the pool, and the fact that the filters themselves could have worked perfectly well installed in a small residential pool would not change that the grounds containing the pool could be found to be defective because of the use of improper filters.

{¶ 29} The bench used in the locker room of the recreation center at issue in this case is not materially different from the pool-filter example. It may have no inherent flaws preventing it from serving as a bench, but just as inadequate pool

filters could impair the function of a pool, there is evidence that the bench here impaired the function of the locker room. Specifically, evidence in the record indicates that when the bench was placed in the locker room at the Berea Recreation Center, it created a physical defect "within or on the grounds of" the recreation center because the extended bases of its legs became a tripping hazard in the cramped space available in the locker room.

{¶ 30} As the Eighth District recognized, Steigerwald presented evidence from Dr. Richard Zimmerman, an expert witness in architecture. Dr. Zimmerman observed that the horizontal bases of the bench's legs reached five inches beyond the edge of the bench seat. Dr. Zimerman averred that benches with legs like that "are not the type of benches typically used in locker rooms." He then explained in his expert report that:

> Those extended horizontal base legs . . . extend into the normal, expected, and foreseeable walking area of anyone using or passing by the bench, especially in narrow, cramped, or crowded locker rooms, and especially during periods of peak use as many users are present in and circulating about the locker room.

Based on that, he opined that the locker room had "dangerous tripping hazards in the form of the extended base legs of the bench." He ultimately concluded that the "inappropriate" extension of the legs' bases and the "lack of sufficient clear, unobstructed walking/passage space between the bench and the lockers, and among the other users of the locker room" caused Joan Steigerwald to fall.

{¶ 31} The Eighth District also recognized that Steigerwald presented evidence showing that in the weeks between the installation of the bench and Joan Steigerwald's fall, the recreation center received at least a dozen complaints about

the danger caused by the bench's legs before Joan Steigerwald's fall. Several people stated that they had either tripped or stubbed their toes on the legs.

{¶ 32} Following the plain text of R.C. 2744.02(B)(4), this evidence was sufficient to enable Steigerwald to survive summary judgment: a reasonable finder of fact could conclude that Berea's placing the bench in the locker room created a physical defect "within or on the grounds" of the recreation center.

{¶ 33} Accordingly, I would conclude that the Eighth District correctly determined that a genuine issue of material fact existed as to the "physical defect" requirement of R.C. 2744.02(B)(4), permitting Steigerwald's case to survive summary judgment. I would therefore affirm the Eighth District Court of Appeals' judgment reversing the trial court's judgment. Because the majority opinion does not, I respectfully dissent.

_____

Paulozzi Co., L.P.A., Todd O. Rosenberg, and Amy L. Higgins, for appellee.

Mazanec, Raskin & Ryder Co., L.P.A., Frank H. Scialdone, and Zachary W. Anderson, for appellants.

Roetzel & Andress, L.P.A., and Stephen W. Funk, urging reversal for amicus curiae, Ohio Association of Civil Trial Attorneys.

_____